**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PAR ELECTRICAL CONTRACTORS, Inc. (d/b/a RIGGIN & DIGGIN LINE CONSTRUCTION, Inc.),**

             **Plaintiff,**

       v.                                  **8:05-CV-1409**
                                              **(GLS/DRH)**

**JAMES C. ATKINS,**

             **Defendant.**[1]
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| HODGSON, RUSS LAW FIRM<br>Albany Office<br>677 Broadway<br>Suite 301<br>Albany, New York 12207-2884 | NOREEN D. GRIMMICK, ESQ. |
| **FOR THE DEFENDANT:** | |
| HARRIS, BEACH LAW FIRM<br>Albany Office<br>677 Broadway<br>Suite 1101<br>Albany, New York 11207-2884 | MARK J. McCARTHY, ESQ. |

---

[1] Because Atkins has not responded to Par's argument regarding his counter-claim, the court deems the argument as conceded. Accordingly, Atkins' counter-claim is dismissed. *See* Dkt. No. 24.

**Gary L. Sharpe**
**U.S. District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

After Par Electric (Par) and Atkins severed their business relationship, Par brought this lawsuit alleging claims for, *inter alia*, trademark infringement and breach of a non-compete agreement.[2] As an initial matter, the court notes that while Par has moved for partial summary judgment, *see Dkt. No. 42,* it is actually seeking full judgment as to Atkins' liability.[3] For the reasons that follow, Par's motion is granted in part and denied in part.

## II. Background

James Atkins formerly served as the president of Riggin & Diggin Line Construction, Inc. (Riggin & Diggin or RDLC), a company engaged in

---

[2] Specifically, Par alleges causes of action for (1) trademark infringement under the Lanham Act, (2) breach of both non-compete and confidentiality covenants and (3) misappropriation of trade secrets. *See Dkt. No. 1.* Par also seeks injunctive relief under State law for injury to its business reputation. *See* N.Y. GEN. BUS. L. § 360-l. The court declines to address Par's requested injunctive relief at this juncture.

[3] In its motion papers, Par requests that the court enter judgment as to Atkins' liability, leaving the issue of damages and injunctive relief to be decided at trial. *See Dkt. No. 42.* Par is essentially asking the court to bifurcate the case. *See* FED. R. CIV. P. 42(b); *see also Callahan v. U.S. Filter, Inc.,* 01-CV-6406, 2005 WL 61498, at *1 (W.D.N.Y. Jan. 11, 2005) (discussing under what circumstances bifurcation of issues is necessary). Instead, the court treats Par's motion as a standard motion for summary judgment.

the business of constructing and maintaining electrical transmission and distribution systems.  *See Pl. SMF ¶¶1-2, Dkt. No. 42.*  Par is also engaged in the business of constructing and maintaining electrical transmission and distribution systems.  *See id. at ¶3.*  On October 2, 2000, Par's parent company, Quanta Services, Inc. (Quanta), acquired Riggin & Diggin from Atkins.  *See id. at ¶4*.  As part of the deal, Quanta gained control over all of Riggin & Diggin's assets, including its name, customer contacts, customer lists, and customer information.  *See id. at ¶5*.

At the time of the merger, Atkins signed an Acquisition Agreement, which included both non-compete and confidentiality covenants.  *See Pl. SMF ¶7, Dkt. No. 42.*  The Agreement required Atkins not to compete with Quanta for one year following the termination of his employment, or disclose confidential information related to the business.  *See id.*[4]  The Riggin & Diggin name is associated with electrical work in upstate New York, and following the merger, Quanta continued to use the Riggin & Diggin name in the course of business.  *See id. at ¶¶5-6.*  For example, the Riggin & Diggin name appeared on the company's invoices and workers'

---

[4] At the time Atkins signed the Acquisition Agreement, he also entered into an Employment Agreement.  That agreement also required that Atkins not compete with Quanta or disclose Quanta's confidential information for one year after the termination of his employment.  *See Pl. SMF ¶¶8-9, Dkt. No. 42.*

3

uniforms.  *See Pl. SMF ¶6, Dkt. No. 42.*

In 2003, Riggin & Diggin was merged with Par (a subsidiary of Quanta).  *See id. at ¶10.*  Atkins continued to work for the company as a division manager, and he was eventually made Regional Vice President of Par.  *See id.*  In both of these positions, Atkins was exposed to Par's confidential information, including business plans and strategies, profit margins, customer contact information, and equipment costs*.  See id. at ¶11.*  Since much of the work in the electrical transmission and distribution business is awarded through the bid process, the type of information known by Atkins was valuable to competitors bidding against Par at the time.  *See Pl. SMF ¶11, Dkt. No. 42.*  Atkins admits that he was exposed to information that would be useful to Par's competitors.  *See Def. SMF ¶11, Dkt. No. 44.*[5]

Atkins voluntarily left his job at Par in February 2005.  *See id. at ¶12.*[6]  At the time of his departure, Atkins entered into a Severance Agreement that incorporated the confidentiality and non-competition covenants from

---

[5]Atkins also points out that Par has only made general reference to the confidential information at issue, and not pointed to what specific information the company believes Atkins improperly disclosed following his employment at Par.  *See Def. SMF ¶11, Dkt. No. 42.*

[6]Atkins claims that while he stopped providing Par services in February 2005, his official termination date should be considered November 22, 2004.  *See id. at ¶12.*

4

his previous Employment Agreement. *See id. at ¶14.* In early 2005, Atkins formed a new company, RDLC Utility Contractors, Inc., (RDLC). *See id. at ¶¶16-17.* Par had used the name "RDLC" while Atkins was still with Par. *See Pl. SMF ¶17, Dkt. No. 42.* The newly formed RDLC also advertised under the name Riggin & Diggin Line Construction in 2005 and used the same logo that had been used by Par. *See id.* Atkins denies that Par used the RDLC name for business advertisements while he worked for the company. *See Def. SMF ¶17, Dkt. No. 44.* Atkins' use of Riggin & Diggin caused invoices owed by Atkins to be sent to Par because of market confusion between the two companies. *See id. at ¶18.* Atkins denies that there was confusion between the two companies because Par had previously stopped using the RDLC name in 2003. *See Def. SMF ¶¶18, 22; Dkt. No. 44.* RDLC sales from the period of April 1, 2005 to November 15, 2005, were $173,101.74, and much of the work involved electrical transmission and distribution systems. *See id. at ¶19.*[7] Also during 2005, a representative of RDLC attended pre-bid meetings with former Par customers. *See Pl. SMF ¶20, Dkt. No. 42.* RDLC's customer contact list for 2005 included numerous Par customers. *See id. at ¶21.* Atkins does

---

[7]Atkins asserts that RDLC did not perform significant electrical work in early 2005 but does not dispute these sales figures for later in the year. *See Def. SMF ¶16, Dkt. No. 44.*

not dispute his company's presence at pre-bid meetings or that RDLC's customer list included numerous Par customers. *See Def. SMF ¶¶19-21, Dkt. No. 44.*

### III. Discussion

### A. Motion for Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165,170 (2d Cir. 2006) (citation omitted). All reasonable inferences must be drawn in favor of the nonmoving party. *See Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC.*

*v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group*, *Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

**B.     Federal Lanham Act Claim: Trademark Infringement**

Par maintains that Atkins' use of the name Riggin & Diggin in the formation of his new company violates the Lanham Act. *See* 15 U.S.C. § 1125(a)(1). In response, Atkins argues that Par discontinued the use of the Riggin & Diggin name in 2003, thereby justifying his later use of the name.

The Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services...uses in commerce any...name...or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

7

15 U.S.C. § 1125(a)(1).

"To prevail on a Lanham Act infringement claim, a claimant must show that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137 (2d Cir. 1999) (citation omitted). Therefore, the court's first inquiry is whether the Riggin & Diggin name constitutes a valid mark entitled to protection.

In general, "[t]he Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in...commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (citing 15 U.S.C. § 1127). "While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks [Section 43(a)]...is one of the few provisions that goes beyond trademark protection." *Id.* "As originally enacted [Section 43(a)] created a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or *services*.'" *Id.* (emphasis added). As such, "'[s]ervices' as used in the Lanham Act has been defined as the performance of labor for the benefit of another. Those

services must not be solely for the benefit of the performer; the services must be rendered to others." *Morningside Group Ltd.*, 182 F.3d at 137 (internal quotation marks and citation omitted). Lastly, the claimant must have used the claimed mark to identify its services. *See id.* Here, Par is engaged in the electrical service business for the benefit of third parties. There is no dispute that the mark in question, the Riggin & Diggin name, was acquired by Par from Atkins in 2000. While the parties contest the extent to which Par used the mark after 2003, there is no dispute that the mark continued to be used by Par in some capacity following the acquisition.

The court must now consider the likelihood of confusion between Atkins' new company RDLC and Par. *See Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). The *Polaroid* court identifies eight factors relevant to the likelihood of confusion inquiry. Specifically, the court should look to: (1) the strength of plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will "bridge the gap," (5) any evidence of actual confusion, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's product (or services), and (8) the

sophistication of the buyers. *See id.* None of the eight factors standing alone is dispositive, and the list is not exhaustive. *See Morningside Group Ltd.,* 182 F.3d at 137.

Having considered and balanced the *Polaroid* factors, the court concludes that Atkins' use of the Riggin & Diggin name creates sufficient confusion to establish a trademark infringement violation under the Lanham Act. A common sense approach dictates that if two companies have the same name, confusion is likely, if not inevitable. Atkins sold the Riggin & Diggin name to Par in 2000. In 2005, he started a business named Riggin & Diggin Utility Contractors providing: (1) the exact same services, (2) in the same geographic area, (3) to the exact same customer base.

Other factors also weigh in favor of finding a likelihood of confusion. Following Atkins' sale of his business in 2000, the Riggin & Diggin name continued to be used by Par on invoices, uniforms, and generally in the course of business. Atkins argues that Par discontinued using the Riggin & Diggin name in 2003. *See Def. SMF ¶5, Dkt. No. 44.*[8] However, he does

---

[8] Generally, the Riggin & Diggin name was associated with power line work in upstate New York. *See Pl. SMF ¶ 6, Dkt. No. 42; Def. SMF ¶ 6, Dkt. No. 44.* Therefore, Atkins' use of his old company's name is likely to cause confusion between customers as to the legal owner. This also suggests a lack of good faith on behalf of Atkins in adopting the name of his new company. *See Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 137 (2d Cir. 1999).

not specifically deny that the Riggin & Diggin name was used in the manner asserted by Par from 2000-2003. *See id. at ¶¶5-6.*[9] Moreover, Par claims that it used the Riggin & Diggin name after 2003, while Atkins still worked for Par. *See Pl. SMF ¶17, Dkt. No. 44; Def. SMF ¶17, Dkt. No. 46.* Additionally, Par contends that when Atkins started his new company, RDLC, he advertised under the Riggin & Diggin name and used the same logo as Par. Atkins only objects to Par's contention that he used the RDLC name in business advertisement.[10] Overall, based on the above, Atkins' use the Riggin & Diggin name created sufficient confusion to establish a violation of the Lanham Act. Accordingly, Par's motion for summary judgment on this ground is granted.

## C.     State Law Claims

### 1. The Non-Compete Agreement

Par argues that Atkins breached his non-compete agreement. Atkins does not dispute the scope or duration of the agreement but instead argues

---

[9]In his statement of material facts, Atkins claims that "'RDLC' was not used by itself to do business during the applicable time periods." *See Def. SMF at ¶6, Dkt. No. 46.* The court interprets this statement to mean that "RDLC" was not used alone on the invoices or uniforms, but nonetheless appeared in conjunction with Par or Quanta's name.

[10]Par also argues that two of Atkins' work invoices, which were accidentally sent to Par are evidence of actual market confusion. *See Pl. SMF ¶18, Dkt. No. 42.* Instead, Atkins claims that the misdirected mail was due to an error by the sender, not (as Par maintains) due to mistaken identity. *See Def. SMF ¶18, Dkt. No. 44.*

11

that his official date of termination should be considered November 22, 2004, and not February 2005.  Based on this assertion, Atkins maintains that Par must show that he violated the agreement between November 22, 2004 and November 22, 2005.  Lastly, he denies that his company engages in competitive business with Par.

The applicable contract provision provides that no person shall compete with the company for one year "directly or indirectly, for himself or on behalf...with any other person, company, partnership, corporation or business of whatever nature."  *See Acquisition Agreement, Ex. C; Dkt. No. 4.*[11]  The covenant further states that the person shall not engage in any employment position "in any competitive business within 150 miles of where the Company or any subsidiary of the Company conducts business, or has conducted business within the past three years.  *See id.*  It is undisputed that in early 2005, Aktins started his own business, performing the same type of electrical work as Par, in the same geographical area, for the same customer base.  *See Pl. SMF ¶¶16, 19, 20, 21, Dkt. No. 42; Def. SMF ¶¶16, 20, 21, Dkt. No. 44.*  At this juncture, whether or not Atkins

---

[11]The court notes that it has recited the non-compete and confidentiality covenant language as it appeared in the parties' Acquisition Agreement.  *See Acquisition Agreement, Ex. C.; Dkt. No. 4.*  This language was also incorporated in Aktins' later Employment and Severance Agreement with Quanta.  *See Employment & Severance Agreement, Exs. D, E; Dkt. No. 4.*

severed his employment relationship with Par in November 2004 or February 2005 (while applicable to the measure of damages) is immaterial since he competed with Par within the one year time period.  It is evident that Atkins plainly violated the non-compete agreement at issue here.  Accordingly, Par's motion for summary judgment is granted on this ground.

### 2. Misappropriation of Trade Secrets[12]

Par argues that Atkins' disclosure of its trade secrets was inevitable given his former position at the company and the fact that he is now Par's competitor.  Atkins does not dispute the validly of the confidentiality agreement.  However, he responds that Par has failed to identify any specific confidential information subject to protection, or how Atkins has actually misappropriated protected information.

"Under New York law, to prevail on a claim of misappropriation of trade secrets a claimant must show that it possessed a trade secret, and that it was obtained in breach of an agreement, confidential relationship, or duty, or as a result of discovery through improper means." *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, 388 F. Supp. 2d 37, 65 (N.D.N.Y.

---

[12]The confidentiality clause at issue states that a person shall not "use or disclose" confidential information learned in the course of working for the company, including, lists of customers, operational policies, pricing and cost information.  *See Acquisition Agreement, Ex. C; Dkt. No. 4.*

13

2005) (citation omitted).  "[A] trade secret is defined as 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." *Pella Windows & Doors v. Buscarnera*, 07-CV-82, 2007 WL 2089298, at *10 (E.D.N.Y. July 18, 2007) (citing *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 968 (2d Cir.1997)).

"In determining whether information is a trade secret, New York courts will consider: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Pella Windows & Doors,* 2007 WL 2089298 at *9 (citing *No. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir.1999)). One of the most important factors in determining whether information is a trade secret is whether the information is kept secret by the owner.  *See*

*Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986).  However, mere knowledge of the intricacies of a former employer's business operation does not necessarily constitute a trade secret, and is not sufficient to justify the enforcement of a restrictive covenant.  *See Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F. Supp. 2d 525, 537 (S.D.N.Y. 2004).  For example, price lists, product samples, and marketing plans are items that are not, as a matter of law, protected trade secrets.  *See Gemmy Indus. Corp. v. Crisha Creations, Ltd.*, 04-CV-1074, 2004 WL 1406075, at *1 (S.D.N.Y. June 23, 2004).

At this juncture, the facts alleged by Par in support of its trade secret misappropriation claim do not, as a matter of law, warrant summary judgment.  For example, based on the facts as alleged by Par, the court cannot determine: (1) what specific information, if any, constitutes trade secrets and (2) the extent to which the information was kept confidential.  Instead, Par generally asserts that, as a regional Vice President, Atkins was exposed the company's customer list, strategies, and price information, and as such, he has inevitably misappropriated its trade secrets.  *See Estee Lauder Co. Inc. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006).  Regardless of the truthfulness of Par's conclusory

allegations, the court must first identify what information is subject trade secret protection. Therefore, questions of fact remain. Accordingly, Par's motion seeking summary judgment on its claims for breach of the confidentiality agreement and misappropriation of trade secrets is denied.[13]

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that Atkins' counter-claim is dismissed; and it is further

**ORDERED**, that plaintiff's motion for summary judgment (*Dkt. No. 42*) is **GRANTED** as to its Lanham Act claim under 15 U.S.C. § 1125(a)(1); and it is further

**ORDERED**, that plaintiff's motion for summary judgment (*Dkt. No. 42*) is **GRANTED** as to its breach of contract claim for Atkins' violation of the non-compete agreement; and it is further

**ORDERED**, that since the same questions of material fact remain, summary judgment as to Par's misappropriation of trade secrets claim and breach of the confidentiality claim is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of this Order

---

[13]The court recognizes that not all confidential information is considered a protected trade secret. And as such, a determination that Par's information is not a protected trade secret does not *per se* dismiss the breach of confidentiality claim, or vice versa. *See Detsis v. Victoria's Secret Stores, Inc.*, 03-CV-5358, 2006 WL 2819586, at *6 (S.D.N.Y. Sept. 29, 2006). However, since issues of fact remain as to both, the court denies summary judgment on both claims.

to the parties.

**IT IS SO ORDERED.**

September 14, 2007
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge